UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Melissa Currier, as Administrator of the Estate
of Nicholas B. Carpenter, et al.,

      v.

Newport Lodge No. 1236, Loyal Order of
Moose, Newport, New Hampshire, et al.

Civil No. 21-cv-00667-JL
Opinion No. 2022 DNH 011

**MEMORANDUM ORDER**

Resolution of defendants' motions to dismiss this insurance coverage dispute hinges on:  (1) whether the plaintiffs must first obtain a judgment or settlement against the defendants in their underlying tort suit in order to have standing to bring this declaratory judgment action and (2) whether the declaratory relief sought is so premature and hypothetical that it is not ripe for review in federal court.  The plaintiffs here – alleged tort victims and plaintiffs in an underlying negligence and liquor liability suit – have sued the defendants in the underlying tort action and their insurers,[1] seeking a declaratory ruling that the tortfeasor defendants are entitled to liability coverage under certain insurance policies and that one policy is not eroded by defense costs.  This court has jurisdiction under 28 U.S.C. § 1332(a) (diversity).

---

[1] The defendants here are:  (1) the alleged tortfeasor defendants in the underlying litigation (Moose International, Inc. and Newport Lodge No. 1236, Loyal Order of Moose, Newport, New Hampshire); and (2) four insurance companies (Fraternal Insurance Company, Inc., American Empire Surplus Lines Insurance Company, Great American Assurance Company, and Gemini Insurance Company).

Defendants move to dismiss, arguing that the plaintiffs lack standing and that their claims are untimely and unripe.  After considering the parties' submissions and hearing oral argument, the court grants defendants' motions in part and denies them in part.  The absence of a judgment or settlement in the underlying litigation does not deprive the plaintiffs of standing to bring this action, and defendants' other standing arguments lack merit.  Because, however, the declaratory relief sought here is wholly dependent on a series of contingent events that have not occurred, and may never occur, the claim is not yet fit for judicial review.  Nor would the declaratory relief prevent hardship to the parties by resolving a dilemma in the underlying litigation or ending that litigation.  The plaintiffs, as the parties invoking federal court jurisdiction, have therefore not met their burden of proving that their claim is ripe.  The court dismisses it without prejudice.  Defendants' statute of limitations challenge is denied as moot.

## I.   **Applicable legal standard**

To defeat a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Martinez v. Petrenko, 792 F.3d 173, 179 (1st Cir. 2015). This standard "demands that a party do more than suggest in conclusory terms the existence of questions of fact about the elements of a claim."  A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 81 (1st Cir. 2013).  A motion to dismiss based on a statute of limitations, such as some of the motions presented here, can only be successful when "the pleader's allegations leave no doubt that an asserted claim is time-barred."  Gorelik v.

Costin, 605 F.3d 118, 121 (1st Cir. 2010) (internal quotation marks omitted).  Moreover, where, as here, a defendant challenges the court's subject matter jurisdiction under Rule 12(b)(1), the "pleading standard for satisfying the factual predicates for proving jurisdiction is the same as applies under Rule 12(b)(6)."  Labor Relations Div. v. Healey, 844 F.3d 318, 327 (1st Cir. 2016).

In ruling on defendants' motions to dismiss, the court accepts as "true all well-pleaded facts in the plaintiffs' complaint[ ], scrutinize[s] them in the light most hospitable to the plaintiffs' theory of liability, and draw[s] all reasonable inferences therefrom in the plaintiffs' favor."  Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009).  The court may also consider judicially noticed documents, matters of public record, documents (with undisputed authenticity) central to the plaintiffs' claim or sufficiently referred to in the complaint, and concessions in the plaintiffs' objections to the motion to dismiss, without converting the 12(b)(6) motions into motions for summary judgment. See Breiding v. Eversource Energy, 939 F.3d 47, 49 (1st Cir. 2019); Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).

## II.  **Background**

The court recites the relevant factual background from the plaintiffs' First Amended Complaint[2] and materials referenced and incorporated therein.[3]  Plaintiff

---

[2] Doc. no. 3-1.

[3] These materials include the First Amended Consolidated Complaint in the underlying tort litigation (docket number 1:19-cv-1196-JL), and the insurance policies in question.

Melissa Currier is the administrator of her son Nicholas Carpenter's estate.  Plaintiff Jennifer Rhodes is the administrator of her daughter Michelle Fenimore's estate.[4]  At approximately 11:15 p.m. on September 22, 2017, Carpenter and Fenimore were killed when a vehicle driven by Kristin Lake collided with their vehicle on New Hampshire Route 10 in Croydon, New Hampshire.

Earlier that evening, Lake had been drinking at the social quarters at the Newport, New Hampshire Moose Lodge.  Lake was at the Newport Lodge as a guest of a member. Following the crash, Lake's blood alcohol concentration (BAC) tested at .144, over the legal limit to operate a motor vehicle in New Hampshire.

In November 2019 and May 2020, the plaintiffs filed suit in this court against the Newport Lodge, alleging claims for negligent and reckless service under New Hampshire's liquor liability statute, RSA 507-F.  They later filed a separate suit against Moose International, Inc., the umbrella charitable organization for local Moose lodges, alleging negligence and vicarious liability.  After the court consolidated the related cases, the plaintiffs filed an amended consolidated complaint in the underlying litigation on September 17, 2020.  The underlying litigation is ongoing.  Trial is scheduled for April 5, 2022, and summary judgment motions from the Newport Lodge, Moose International, and the plaintiffs are presently pending.

---

[4] The estates are located in Vermont and thus considered citizens of Vermont for jurisdictional purposes.

The plaintiffs filed this declaratory judgment action about a year after filing the operative complaint in the underlying litigation.[5]  They seek declaratory relief under New Hampshire RSA 491:22[6] that (1) the Newport Lodge and Moose International are entitled to liability insurance coverage under policies issued by several defendant insurers, and (2) any coverage under a policy issued by defendant Fraternal Insurance Company, Inc. is not eroded by defense costs.[7]

### III.  <u>Analysis</u>

New Hampshire's declaratory judgment statute provides, in relevant part, that "[a]ny person claiming a present legal or equitable right or title may maintain a petition against any person claiming adversely to such right or title to determine the question as between the parties, and the court's judgment or decree thereon shall be conclusive." N.H. Rev. Stat. Ann. § 491:22.  Declaratory judgment actions under RSA 491:22 include petitions "to determine the coverage of a liability insurance policy," and in such actions, the insurer bears the "burden of proof concerning the coverage."  RSA 491:22-a.  "Where a plaintiff seeks a declaratory judgment, he is not seeking to enforce a claim against the defendant, but rather a judicial declaration as to the existence and effect of a relation between him and the defendant."  Benson v. New Hampshire Ins. Guar. Ass'n, 151 N.H. 590, 593 (2004) (citing N. Country Envtl. Servs. v. Town of Bethlehem, 150 N.H. 606,

---

[5] <u>See</u> doc. no. 3-1.

[6] The plaintiffs clarified in one of their objections that they are not pursuing a declaratory judgment under the Federal Declaratory Judgment Act.  <u>See</u> doc. no. 46-1 at 1.

[7] <u>Id.</u> at 12.

621 (2004)).  The claim "must be definite and concrete touching the legal relation of

parties having adverse interests, and must not be based upon a hypothetical set of facts."

Carlson v. Latvian Lutheran Exile Church of Bos. & Vicinity Patrons, Inc., 170 N.H. 299,

303 (2017), as modified on denial of reconsideration (Oct. 20, 2017) (quoting Duncan v.

State, 166 N.H. 630, 645 (2014)).

Defendants[8] move to dismiss the plaintiffs' declaratory judgment claim on several

grounds.  They argue that this court lacks jurisdiction over the claim because the

plaintiffs lack standing to bring the claim, and the claim is not ripe.  They further argue

that the plaintiffs' suit is untimely.  The court begins with standing.

## A.    Standing

Defendants assert that the plaintiffs lack standing to bring a declaratory judgment

action to establish coverage for two reasons:  first, that the plaintiffs are not named

beneficiaries or recognized third-party beneficiaries of the insurance policies at issue; and

second, that the plaintiffs have not obtained a judgment or settlement in the underlying

tort action.  The court addresses and rejects each argument in turn.

**Beneficiary status**.  Defendants first argue that the plaintiffs do not have a present

legal or equitable right or title in the insurance policies at issue because they are neither

parties to nor beneficiaries of those policies.  This argument could have merit if the

plaintiffs were advancing a breach of contract claim, but they are not.  Defendants do not

---

[8] The court refers to the defendants collectively because while they filed four separate motions to
dismiss, the central bases for each motion (standing and timeliness) are the same or similar, and
the question of ripeness applies regardless of which defendant raised it in a motion to dismiss.

cite, and the court's research has not uncovered, any controlling[9] New Hampshire cases that require a tort victim to be a party to an insurance policy, or recognized third-party beneficiary of that policy, to have standing to pursue a coverage suit against the insurer and insured. If that were a requirement, arguably no tort victim would have standing as most, if not all, liability insurance policies do not name tort victims as parties or beneficiaries under the policy. The fact that the plaintiffs are not parties to the insurance policies or recognized third-party beneficiaries of those policies does not deprive them of standing to bring this action.

**Lack of judgment or settlement**. Defendants next argue that the plaintiffs lack standing to bring this action because they have not obtained a judgment or settlement in the underlying tort litigation. American Empire further argues that its policy language expressly forbids the plaintiffs from filing this suit absent an "agreed settlement" or "final judgment" against its insured. The court disagrees with both arguments.

American Empire's policy states that a "person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial."[10] It further states that no "person or organization has a right . . . [t]o join us as a party or otherwise bring us into a 'suit' asking for damages from an insured."

---

[9] In O'Connor v. Certain Underwriters at Lloyd's of London, the court referenced the absence of a contract between the tort victim plaintiff and the insurer defendants as a reason why the plaintiff did not have a present legal or equitable right to bring a declaratory judgment action under RSA 491:22. No. 03-E-0064, 2005 WL 6310216 (N.H. Super. Jan. 25, 2005). In the same order (a non-binding decision from the New Hampshire Superior Court), however, the court assumed that the plaintiff had standing to bring the action and addressed the merits of his coverage claim. Id. O'Connor thus has little precedential value here.

[10] See American Empire Primary Policy, Ex. F to Motion to Dismiss (doc no. 20-8).

This declaratory judgment action to establish insurance coverage under the policy is neither a "suit asking for damages from an insured" nor a suit "to recover on an agreed settlement or on a final judgment against an insured."  The quoted policy language therefore does not bar the plaintiffs from bringing this suit prior to obtaining a judgment or settlement against American Empire's insured.

In support of their argument that the plaintiffs lack standing absent a settlement or judgment in the underlying case, defendants also seize on Judge Barbadoro's observation in Bunker v. Midstate Mut. Ins. Co. that "New Hampshire . . . is not a 'direct action' state, meaning that it does not provide injured parties with a cause of action against an insurance company until the insured's liability is established in an earlier judicial proceeding" No. 14-CV-274-PB, 2014 WL 3891296, at *4 (D.N.H. Aug. 7, 2014) (Barbadoro, J.) (citing Burke v. Fireman's Fund Ins. Co., 120 N.H. 365, 366-67, (1980)). Standing was not at issue in Bunker, however, as the court referenced "direct actions" as part of its personal jurisdiction analysis.

In any event, the statement does not stand for the proposition defendants allege. Rather, the "direct action" referenced in this quote is a suit by an injured party against an insurer, in which the plaintiff looks to hold the insurer liable for the actions of the insured.  See Fletch's Sandblasting & Painting, Inc. v. Colony Ins. Co., No. 15-CV-490-PB, 2017 WL 11541726, at *4 (D.N.H. Nov. 6, 2017) (Johnstone, J.), report and recommendation adopted, No. 15-CV-490-PB, 2017 WL 11541728 (D.N.H. Nov. 28, 2017) ("Moreover, it is well established under New Hampshire law that an insurer may not be sued directly for its insured's actions until the insured is found liable and is unable

or unwilling to satisfy the judgment."); Black's Law Dictionary, <u>Direct Action</u> (11th ed. 2019) (defining "direct action" as a "lawsuit by a person claiming against an insured but suing the insurer directly instead of pursuing compensation indirectly through the insured"); cf. <u>Burke, 120 N.H. at 367</u> ("Before the insurer's duty to provide indemnity [under RSA 268:16 I] arises, the plaintiff must first have the liability of the insured judicially imposed.").  Indeed, in <u>Burke</u> – the decision Judge Barbadoro cited in support of his "direct action" quote in <u>Bunker</u> – the dispute was about motor vehicle insurance and indemnification under a separate statute, and the claim was a direct action by the tort victim against the insurer to pay for the insured's liability, not a declaratory judgment suit relating to the scope of coverage.  Thus, when a tort victim sues an insurer to hold the insurer liable for its insured's actions, New Hampshire law requires a finding of liability against the insured prior to the tort victim bringing suit.  See <u>Shaheen v. Preferred Mutual Ins. Co.,</u> 668 F. Supp. 716, 719 (D.N.H. 1987) ("plaintiffs are asking the Court to declare Utica's liability to them—a declaration that requires the determination of Cotsibas' liability").

A different rule applies in declaratory judgment actions to establish the scope of insurance coverage, as here.  See <u>id.</u> at 719 (suggesting that "the issue of the legal scope of insurance coverage . . . might be suitable for declaratory relief" absent a finding of the insured's liability) (citing <u>Morin v. Berkshire Mut. Ins. Co.,</u> 126 N.H. 485, 486 (1985)); <u>Warner v. Frontier Ins. Co.,</u> 288 F. Supp. 2d 127, 129 (D.N.H. 2003) (DiClerico, J.) ("Some courts have allowed an injured party to bring a declaratory judgment action against an insurer to determine the applicability of its coverage, even in the absence of a

9

determination of the insured's liability to the injured party."); see also McNamara, 9 New Hampshire Practice, Personal Injury: Tort and Ins. Practice § 14.24A (2021) ("A case in which an injured plaintiff claims an insured tortfeasor is liable to him and in which the tortfeasor's insurance carrier disclaims any obligation to provide the tortfeasor with liability coverage is a proper subject for a declaratory judgment action, brought on behalf of the injured party.").  The "New Hampshire Supreme Court (and, necessarily, the New Hampshire Superior Courts) have on many occasions permitted victims to pursue declaratory judgment actions against their tortfeasor's insurance provider," absent a finding of the tortfeasor-insured's liability.  Hardy v. Granite State Ins. Co., No. 20-CV-216-SM, 2020 WL 2768969, at *3 (D.N.H. May 28, 2020) (McAuliffe, J.) (collecting cases).

While the New Hampshire Supreme Court has not highlighted the distinction between direct actions and coverage disputes with perfect clarity, its decisions reflect that different jurisdictional prerequisites exist for each type of suit.  Cf. Radkay v. Confalone, 133 N.H. 294, 296-97 (1990) (noting that the "justiciability of a declaratory judgment action is not dependent upon proof of a wrong committed by one party against the other") (quoting Faulkner v. Keene, 85 N.H. 147, 149 (1931)).  Because the plaintiffs' suit seeks a determination of whether coverage exists under certain insurance policies,[11] and is not a

---

[11] The plaintiffs' complaint seeks a declaration that the Newport Lodge and Moose International are "entitled to [certain amounts of] coverage" under the policies and that the liquor liability exclusions do not apply.  See Doc. no. 3-1, at ¶¶ 41, 42, 51, 52, 60, 61, 71, 72.  That is fundamentally different relief than a finding that the insurers are liable for losses caused by the insureds.

direct action against the insured as defined above and as generally understood in the law, a judgment or settlement in the underlying tort case is not a prerequisite to standing. Defendants' motions to dismiss on standing grounds are denied.

### B.    Discretionary considerations

The jurisdictional inquiry does not end simply because the plaintiffs may have standing to pursue this declaratory judgment action.  As Judge DiClerico observed in Warner, "there is no absolute rule either requiring or forbidding a court to exercise jurisdiction over this sort of an action.  Instead, the court enjoys a measure of equitable discretion in deciding whether to hear the injured party's declaratory judgment action." 288 F. Supp. 2d at 130.  Defendants urge the court to exercise that discretion and refuse to hear this suit.  The court declines the invitation.

Whether to entertain an action for declaratory relief involves "considerations of practicality and wise judicial administration."  Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995); see also El Dia, Inc. v. Hernandez Colon, 963 F.2d 488, 494 (1st Cir.1992) ("Although declaratory relief frequently serves a valuable purpose and courts must remain reasonably receptive to suitable requests for it, . . . there are limits to that receptivity").  One consideration the court weighs in exercising jurisdiction over a declaratory judgment action is the extent to which the sought-after relief would serve to put the underlying controversy to rest.  Warner, 288 F. Supp. 2d at 130 (citing Rhode Island v. Narragansett Indian Tribe, 19 F.3d 685, 693 (1st Cir. 1994)).

Here, while the sought-after relief may give the plaintiffs added reassurance that any judgment or settlement in the underlying litigation may be paid for with insurance

proceeds, and thus inform the plaintiffs' settlement efforts or litigation tactics, based on the defendants' litigation posture, it likely will not put the underlying controversy to rest. Newport Lodge and Moose International vigorously dispute all aspects of the plaintiffs' claims, have moved for summary judgment on those claims, and appear poised to defend themselves before a jury if summary judgment is unsuccessful. These factors thus weigh against exercising jurisdiction over the plaintiffs' declaratory judgment action.

On the other hand, the plaintiffs have named all applicable insurers, as well as all potential insureds, as defendants in this suit, so considerations of wise judicial administration and practicality support exercising jurisdiction over this case. Contra Warner, 288 F. Supp. 2d at 130 (finding that a judgment as to the amount of insurance coverage would have little practical effect in a case where the insurers and the tortfeasors were not parties). The court therefore finds that general equitable considerations do not weigh strongly in favor of declining jurisdiction.

### C. Ripeness

Certain defendants also argue that the plaintiffs' claim is not ripe.[12]  The ripeness doctrine derives from "the constitutional requirement that federal jurisdiction extends only to actual cases or controversies." Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 535 (1st Cir. 1995) (citing U.S. Const. art. III, § 2).  It is therefore of no consequence that only some of the defendants have challenged the plaintiffs' claims on ripeness grounds, as "a court has no alternative but to dismiss an unripe action." Id.; see

---

[12] See doc. no. 28-1.

also City of Fall River v. FERC, 507 F.3d 1, 6 (1st Cir. 2007) (noting that "the question of ripeness may be considered on a court's own motion") (internal quotation marks and citation omitted).  As the plaintiffs chose to invoke this court's jurisdiction, they have the "burden to prove ripeness."  Labor Relations Div., 844 F.3d at 326; see also Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) ("the party invoking the jurisdiction of a federal court carries the burden of proving its existence").[13]

The question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Labor Relations Div., 844 F.3d at 326 (quoting MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007)).  Accordingly, "a claim is ripe only if the party bringing suit can show both that the issues raised are fit for judicial decision at the time the suit is filed and that the party bringing suit will suffer hardship if 'court consideration' is withheld."  Id. (quoting McInnis–Misenor v. Me. Med. Ctr., 319 F.3d 63, 70 (1st Cir. 2003)).

Defendants assert that the plaintiffs cannot satisfy either the fitness or hardship elements of the ripeness inquiry.  The plaintiffs muster little in response.  They first misconstrue the defendants' arguments, incorrectly claiming that defendants contend that

---

[13] Although the plaintiffs assert their claim under the New Hampshire declaratory judgment act, the court applies the federal ripeness standard because the plaintiffs have invoked the jurisdiction of the federal courts.  The court must apply federal procedural law, and courts consider declaratory judgment actions procedural.  See Tocci Bldg. Corp. of New Jersey, Inc. v. Virginia Sur. Co., 750 F. Supp. 2d 316, 320 N.2 (D. Mass. 2010) (evaluating a claim for declaratory judgment in a diversity action under the federal, rather than the state, act because "[a] declaratory judgment action is procedural only").

a judgment in the underlying action is required for their declaratory judgment claim to be ripe.[14]  That is plainly not the defendants' argument.  The plaintiffs then attempt to distinguish the defendants' ripeness cases by arguing that those cases arose under the federal declaratory judgment act.  But the most analogous case that the defendants rely upon – Weinhold v. Phoenix Insurance Company – was a coverage determination action under RSA 491:22, not the federal statute.  As the party with the burden to prove ripeness, the plaintiffs must do more in both their pleading and objection to the defendants' motion to dismiss to convince the court that their claims are ripe.  Thus, for the following reasons, the court finds that the plaintiffs' claim, as currently plead, is not ripe.

**Fitness**.  A claim is not fit for adjudication "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  Labor Relations Div., 844 F.3d at 326 (quoting City of Fall River v. F.E.R.C., 507 F.3d 1, 6 (1st Cir. 2007)).  The fitness analysis entails considerations of "finality, definiteness, and the extent to which resolution of the challenge depends upon facts that may not yet be sufficiently developed."  Ernst & Young, 45 F.3d at 535.  Unlike in Weinhold, where a jury had already determined the underlying tortfeasors' liability and the amount of damages, here there are several "uncertain or contingent events that may impact a determination of the [defendants'] available insurance coverage."  Weinhold v. Phoenix Ins. Co., No. 18-CV-383-PB, 2018 WL 5085707, at *4 (D.N.H. Oct. 18, 2018).  Indeed,

---

[14] See doc. no. 46-1, at 1.

the plaintiffs' declaratory judgment claim is wholly dependent on contingent future events and factfinding that may not occur as they anticipate or may not occur at all.

For example, the plaintiffs' tort claims may not proceed to trial against one or both of the defendants.[15]  Further, if the claims are tried, a jury could find neither defendant liable, one defendant liable, or both defendants liable.  It is similarly uncertain if one or both of the defendants are willing to participate in mediation or engage in settlement discussions while their motions for summary judgment are pending.  Plaintiffs' counsel asserted at oral argument that counsel for defendants Moose International and the Newport Lodge in the underlying litigation agreed during a conference with the court that the court needed to resolve this coverage action before mediation in the underlying litigation could be meaningful.  The court has a different recollection of defense counsel's position and nevertheless, defendants' forceful defense strategy in the underlying litigation suggests that they were not content to wait for this coverage dispute to play out before mediating the case.  None of these contingencies or hypothetical scenarios existed in Weinhold, where the court found the fitness element "easily satisf[ied]."  Id.; see also Avery v. N.H. Dep't of Educ., 162 N.H. 604, 608 (2011) (A declaratory judgment action "cannot be based on a hypothetical set of facts." (quotation omitted)).

Moreover, the range of potential damages in the underlying tort case is uncertain at best, and the plaintiffs have not plead facts showing there is a "practical likelihood"

---

[15] Both defendants have moved for summary judgment in the underlying tort case.

that a verdict or settlement in the tort case will ever reach the excess insurance policies at issue in this case.[16] SIG Arms, Inc. v. Emps. Ins. of Wausau, No. CIV. 99-466-JD, 2000 WL 1499456, at *2 (D.N.H. Apr. 26, 2000) ("In determining whether a justiciable controversy exists as to an excess liability insurer's obligations to its insured, before the underlying suits have been resolved, courts have examined the probability of a recovery in the underlying suits that would trigger excess coverage.") (citing Associated Indem. v. Fairchild Indus., 961 F.2d 32, 34–35 (2d Cir. 1992)).  Too many contingencies must occur in the plaintiffs' favor in order for the court to find it practically likely that potentially applicable coverage under any of the policies may be triggered, or that there will be a dispute over that coverage.  While district courts outside of the First Circuit have recognized that "declaratory judgments are issued in cases where insurance companies seek to determine their duties prior to the full adjudication of an underlying controversy," the petitioner in those cases was the insurer, and there was an actual dispute between insured and insurer over the scope of coverage.  Allstate Ins. Co. v. Tenn, No. 3:19-CV-432 (JBA), 2020 WL 3489387, at *4 (D. Conn. June 26, 2020) (collecting cases).  Here, by contrast, the insured and insurers appear united, and the plaintiffs have

---

[16] The court ordered the plaintiffs to show cause that there was a reasonable likelihood that any settlement or judgment in the underlying litigation is likely to exhaust the available policy limits. The plaintiffs' responded in good faith to the show cause order on January 6, 2022.  See doc. no. 51.

not alleged any facts suggesting that there is an actual dispute as to the availability or scope of coverage.[17]

Indeed, the plaintiffs have not plead any facts suggesting that the tortfeasor defendants have requested coverage from their insurers, or that the insurers have denied coverage or dispute the plaintiffs' interpretation of the policies at issue.[18]  Therefore, this case, as plead, is missing the substantial and sufficiently immediate controversy between parties having adverse legal interests, which is required to "warrant the issuance of a declaratory judgment." Labor Relations Div., 844 F.3d at 326.  At oral argument, plaintiffs' counsel stressed that it is customary for parties to file declaratory judgment coverage actions prior to a finding of liability or settlement in the underlying case, and a ruling that the plaintiffs' claim is not ripe would threaten to upend that custom.[19]  While that argument has some appeal, the court's jurisdictional requirements cannot yield to counsel's experience or practical customs in the trial bar.  In choosing to file suit in federal court, the plaintiffs must plead facts from which the court can determine that it

---

[17] Indeed, in Weinhold, the underlying tortfeasor (the State) and the injured party (Weinhold) were aligned as plaintiffs and filed suit together after the State's insurers refused to indemnify it. The plaintiffs here are not similarly aligned with the tortfeasor defendants.  Moreover, the court's understanding based on the pleadings is that the insurers have not similarly refused to indemnify their insureds or otherwise denied coverage.

[18] The plaintiffs allege that the tortfeasor defendants dispute their interpretation of the policy limit erosion provision of the Fraternal policy, so that element of the plaintiffs' claim is arguably fit for judicial review.  See doc. no. 3-1, at ¶ 32.  For the reasons discussed in the next section, however, the plaintiffs cannot satisfy the hardship element for this aspect of their claim, so the claim still fails the ripeness test.

[19] Counsel for Gemini Insurance Company pointed out, however, that it is just as customary for New Hampshire courts to stay premature declaratory judgment coverage disputes until the underlying cases are resolved.  Based on this court's experience, both pronouncements ring true.

has jurisdiction.  The plaintiffs' complaint falls short of that mark.  In so ruling, the court is not requiring that a party must obtain a judgment or settlement in the underlying litigation before an insurance coverage dispute can be ripe.  Rather, under these facts and circumstances, allegations of a more concrete, present dispute are required to invoke this court's jurisdiction.  Part A of the declaratory relief requested by the plaintiffs is accordingly not fit for judicial review.

**Hardship**.  Nor can the plaintiffs satisfy the hardship element of the ripeness test. The court may find hardship when "the challenged action creates a direct and immediate dilemma for the parties."  Sindicato Puertorriqueño de Trabajadores v. Fortuno, 699 F.3d 1, 9 (1st Cir. 2012) (internal quotation marks omitted).  "In general, the greater the hardship, the more apt a court will be to find ripeness."  Ernst & Young, 45 F.3d at 536. The court found the hardship element satisfied in Weinhold because "the underlying action [could not] be resolved until the State's right to indemnification is determined." 2018 WL 5085707, at *6.

The same cannot be said here.  Determining the scope of coverage is not a roadblock to resolving the underlying tort action.  While it may give the plaintiffs more information for mediation (and mediation is not a given), and possibly help the plaintiffs' settlement position, it will not ensure that the case will settle.  In fact, the sought-after declaration will not even set "the underlying controversy to rest," as summary judgment briefing still must be completed and there may be a trial, regardless of whether the court determines the scope of liability insurance coverage.  Narragansett Indian Tribe, 19 F.3d at 693.  Moreover, the "conditional nature of the claims [here] strongly counsels against a

finding of hardship." Labor Relations Div., 844 F.3d at 326.  Thus, the absence of a coverage determination does not present a "direct and immediate dilemma" for the plaintiffs, or the tortfeasor defendants or insurers, in the sense required for a hardship showing.  As the plaintiffs cannot satisfy either element of the ripeness test, the court does not have jurisdiction over their claim and dismisses it without prejudice.  While at oral argument several of the defendants and the plaintiffs raised the option of staying this case pending resolution of the underlying tort case as an alternative to dismissing it, because ripeness is a jurisdictional issue, the "court has no alternative but to dismiss an unripe action." Ernst & Young, 45 F.3d at 535.

### D.       Timeliness[20]

Finally, some of the defendants[21] argue that the plaintiffs' suit is untimely because it was not filed within six months after they filed the operative complaint in the underlying tort action.  See RSA 491:22, III ("No petition shall be maintained under this section to determine coverage of an insurance policy unless it is filed within 6 months after the filing of the writ, complaint, or other pleading initiating the action which gives rise to the question").  The plaintiffs concede that they did not file this lawsuit within six months of when they filed the underlying tort suit.[22]  They argue, however, that at least

---

[20] Defendant American Empire also raises a merits argument that the court need not consider at this time.

[21] The Newport Lodge, Moose International, and Fraternal do not move to dismiss the plaintiffs' complaint on timeliness grounds.  See doc. no. 28.

[22] Using October 9, 2020 (the date the court consolidated the plaintiffs underlying tort suits against the Newport Lodge and Moose International and accepted the plaintiffs' First Amended Consolidated Complaint) as the date from which the six-month limitations period began to run,

one of the exceptions to the six-month limitations period applies because they did not learn of certain key information giving rise to this coverage dispute until well into the discovery period in the underlying litigation.[23]

The problem with this argument is that the plaintiffs plead insufficient facts to support the application of any exception. The plaintiffs instead raised these facts in their objections to the defendants' motions to dismiss and documents attached to those objections. A party cannot, however, amend its complaint through an objection to a motion to dismiss. Thus, had the timeliness issue not been rendered moot by the court's dismissal of the claim on ripeness grounds, the court would have been inclined to dismiss this action as untimely, without prejudice to the plaintiffs' ability to amend its petition to add allegations sufficient to support an exception to the six-month limitations period. Had the court allowed amendment, it would have required plaintiffs' counsel to explain why they did not include facts supporting tolling of the limitations period – facts that the plaintiffs had at their disposal at the time they filed their first amended complaint – in that version of the complaint.

---

this suit was untimely as the plaintiffs did not file it until August 2021. See Binda v. Royal Ins. Co., 144 N.H. 613, 619 (2000) (holding "that an amended writ triggers a new six-month limitations period under RSA 491:22, III when new factual or legal allegations change the cause of action in a manner that raises a coverage issue for the first time").

[23] The six-month period may be extended "where the facts giving rise to such coverage dispute are not known to, or reasonably discoverable by, the insurer until after" the period expires or where "the failure to file [a timely] petition was the result of accident, mistake or misfortune and not due to neglect." RSA 491:22, III. These exceptions apply to both insurers and insureds. See Mottolo v. U.S Fidelity & Guar. Co., 127 N.H. 279, 283 (1985).

If the plaintiffs re-file this action, or some modified version of it, at a later date, and plead sufficient facts to support an exception to the six-month limitations period, the court is inclined to use the filing date of the first amended complaint here (August 16, 2021, see doc. no. 3-1) as the operative date for statute of limitations purposes.  The court cautions defense counsel that it will likely summarily deny or view with skepticism any motions to dismiss a re-filed version of this action on timeliness grounds.

## IV.   **Conclusion**

For the reasons set forth above, Newport Lodge, Moose International, and Fraternal Insurance Company, Inc.'s motion to dismiss[24] is GRANTED.  The remaining defendants' motions to dismiss[25] are DENIED as moot.  The plaintiffs' complaint for declaratory judgment is dismissed without prejudice.  The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. LaPlante
United States District Judge

Dated:  January 31, 2022

cc:   Philip R. Waystack, Jr., Esq.
      Rebecca Anne Witmon, Esq.
      Gregory P. Howe, Esq.
      Matthew J. Lahey, Esq.
      John M. Dealy, Esq.

---

[24] Doc. no. 28.

[25] Doc. nos. 20, 21, and 31.

21

Scott T. Ober, Esq.
John Piegore, Esq.
Brett Richard Corson, Esq.
Katherine Tammaro, Esq.
Mark Robert Vespole, Esq.
Naomi L. Getman, Esq.
Dorren F. Connor, Esq.